SKAMANIA COUNTY
FILED
OCT 20 2025 2:06:35 PM
GRACE D. CROSS
SUPERIOR COURT CLERK

IN THE SUPERIOR COURT OF WASHINGTON FOR SKAMANIA COUNTY

| | |
|---|---|
| SKAMANIA COUNTY ROD & GUN CLUB, a Washington Nonprofit Corporation,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CITY OF NORTH BONNEVILLE, a Washington municipal corporation, BRIAN SABO, a married person, and JOSH GOOD, a single person,<br><br>　　　　　Defendant. | Case No.: 25-2-00095-30<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL** |

The Plaintiffs, Skamania County Rod & Gun Club ("Rod & Gun Club") assert the following facts and claims against the Defendants, City of North Bonneville ("City"), Brian Sabo and Josh Good.

## I.　　INTRODUCTION

1.1　　This case exposes how small-town power can be twisted to serve private interests instead of the public good.

1.2　　In 2024, the Skamania County Rod & Gun Club agreed to sell a one-acre parcel of its property to long-time local residents, Craig and Brindi McKee so they could build three homes consistent with North Bonneville's zoning laws.

1.3　　What should have been a routine, run-of-the-mill, short-plat turned into a campaign of obstruction, intimidation, and retaliation orchestrated by the City's Mayor, Brian Sabo, and his political ally, and want to be mayor, city council member and Deputy Mayor Josh Good.

Page 1 of 12– COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL
2025.10.20 COMPLAINT [FINAL]

Bradley Andersen Law, PLLC
PO Box 147
North Bonneville, WA 98639
360.638.3007

1.4     From the very beginning, the City's actions were driven not by planning or policy, but by personal motive. Mayor Sabo and his family have long lived next door to the Gun Club's property—a quiet, wooded parcel that Sabo wanted, and still wants, to keep as his private greenbelt. When the McKees refused to limit development to a single house, the Mayor and his deputy, Good, used the machinery of City government to make sure the project would never happen or at least would scare the McKees enough to abandon their plans.

1.5     Mayor Sabo sat in City meetings, sometimes pretending to act in an official capacity and other times pretending to be recused, while secretly working to protect his own interests.

1.6     For example, City staff told the McKees' engineer that even if the City approved the proposed short, they would have to pay to improve *the Mayor's private* sewer line before their project could proceed because his current sewer line – which runs across the property, was failing. When challenged publicly, the Mayor pretended to "step down" from the council table but continued in that same meeting to direct the discussions and to argue against the project.

1.7     Wanting Mayor Sabo's endorsement or blessing to replace him as the new mayor, Deputy Mayor Good carried the Mayor's message telling the McKees, that the City Council will fight you all the way.

1.8     Led by Mayor Sabo and Deputy Good, the City refused even to acknowledge ownership of the public sewer line running under its own street, forcing the Gun Club and the McKees to hire a lawyer to sue.

1.9     The Superior Court ruled that the City owns the line and must repair and maintain it. However, the City still refused to comply—instead filing a meritless motion for reconsideration and now an appeal, spending taxpayer money to keep the Mayor's personal sewer dispute alive. Why? To implement the Mayor's plan to scare the McKees away through frustration, delay, legal expenses and unreasonable obstacles.

1.10    In retaliation to the McKee's seeking judicial intervention, the City Council, led

Page 2 of 12– COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL
2025.10.20 COMPLAINT [FINAL]

Bradley Andersen Law, PLLC
PO Box 147
North Bonneville, WA 98639
360.638.3007

again by Sabo and Good, decided upon another tactic: they proposed that the City seize the Gun Club's land under a decades-old and legally irrelevant affidavit, claiming the property could be taken by the City for $3,000. This baseless "forfeiture" theory clouded title further affecting the pending sale, which was all part of Mayor Sabo and Deputy Mayor Good's plan.

1.11    At the same time, Sabo signed an illegal personal-services contract with Good to have the City Council pay Good $1,250 a month beginning in September – even before the lawsuit was filed - to "manage" the litigation—an arrangement expressly prohibited by Washington's conflict-of-interest laws.

1.12    Mayor Sabo and Deputy Mayor Good's scheme worked: The McKees ultimately walked away.

1.13    The Gun Club, which had planned to use the proceeds to support children's charities, was left with nothing but legal bills and a tainted property title. The citizens of North Bonneville were left footing the bill for their leaders' misconduct.

1.14    This case is about more than one parcel of land. It is about the fundamental duty of public officials to act with honesty, fairness, and respect for the law. It is about restoring integrity and accountability in local government and making clear that no one—even a mayor or his deputy—is above the law.

## II.    PARTIES

2.1    Plaintiff Skamania County Rod & Gun Club is a Washington nonprofit corporation located in Skamania County.

2.2    Defendant City of North Bonneville is a Washington municipal corporation organized under Title 35A RCW.

2.3    Defendant Brian Sabo is and was the Mayor of North Bonneville during all relevant times and is sued in both his official and personal capacities. He is also a resident of Skamania County, Washington.

2.4    Defendant Josh Good is and was a City Council member and Mayor Pro Tem of

Page 3 of 12– COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL
2025.10.20 COMPLAINT [FINAL]

Bradley Andersen Law, PLLC
PO Box 147
North Bonneville, WA 98639
360.638.3007

North Bonneville during all relevant times and is sued in both his official and personal capacities. He is also a resident of Skamania County, Washington.

### III. JURISDICTION

3.1   Because this dispute involves real property located inside the City of North Bonneville, Skamania County, and because the Defendants' actions occurred within the County, this court has subject matter and personal jurisdiction over the parties. Venue is also properly before this court.

3.2   This court also has jurisdiction under Washington's Declaratory Judgment Act (Chapter RCW 7.24.) to intervene and provide the Plaintiffs an immediate remedy by declaring the rights and responsibilities of the parties.[1]

### IV. FACTS

***Gun Club Agrees to Sell Property on Condition It Can Be Developed***

4.1   In June 2024, the Gun Club entered into a Purchase and Sale Agreement with Craig and Brindi McKee to sell Lot C-43, located within the city limits of North Bonneville, Washington. The sale was conditioned upon City approval of a three-lot short plat.

ILLUSTRATION 1



4.2   The McKees hired Bell Design Company to prepare and submit the application and assist with the short-plat process.

---

[1] *Pioneer Square Hotel Co. v. City of Seattle*, 13 Wash App 2d 19, 461 P3d 370 (2020).

Page 4 of 12– COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL
2025.10.20 COMPLAINT [FINAL]

Bradley Andersen Law, PLLC
PO Box 147
North Bonneville, WA 98639
360.638.3007

***Mayor Sabo Tells McKee He's Fine with One House but Opposes Development Next Door***

4.3 When Mr. McKee first met with the City regarding the proposed short-plat, the planner, Richard Hall warned that the City would likely not approve the proposal because it was politically sensitive, and that the McKees would first need City Council approval for sewer access, suggesting that the McKees would need to go directly to the City Council.

4.4 Mayor Sabo also told McKee "informally" that he preferred only to see one house built on lot and did not want three houses built next to his house, regardless of what was permitted under the zoning laws.

***Pre-Application Meeting – City Demands McKees Fix the Mayor's Sewer Line***

4.5 On August 7, 2024, Bell Design met with City staff for the pre-application meeting. Unbeknownst to Bell, Mayor Sabo—whose home adjoins the property—attended this meeting as a City representative without disclosing his personal interest.

4.6 City staff, including Sabo and the City Engineer, told Bell that the McKees must either bore a new sewer line under the street or install a pump station serving their property and "the neighbor's", which was Sabo's property.

***City Council Meeting – Mayor Pretends to Step Down but Continues to Influence the Council***

4.7 In September 2024, McKee, his realtor, and his attorney attended a City Council meeting to seek the city's guidance regarding the sewer.

4.8 Sabo announced he was "handing the gavel" to Good to serve as Mayor Pro Tem but, despite his obvious conflict of interest, remained sitting at the council meeting table, helped lead the discussion and spoke freely, asserting that the sewer was too small and too expensive to repair.

4.9 The City, in particular Good, maintained that the City did not own the sewer line, even though it ran under the city street and public records showed it as city owned. The Council,

Page 5 of 12– COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL
2025.10.20 COMPLAINT [FINAL]

Bradley Andersen Law, PLLC
PO Box 147
North Bonneville, WA 98639
360.638.3007

in particular Good, further took the position that even if it did own the sewer line, it was not required to fix it and that the McKees would be solely responsible for its repair or replacement.

4.10    The Council ended the discussion by instructing the City Attorney to work with the McKee's attorney. This led to six weeks of useless talks because the City Attorney refused to recognize that the City owned the sewer or that it was responsible for its repair or maintenance.

4.11    With no other option, the McKees, joined by the Rod and Gun Club, filed a Petition for Declaratory Judgment to have the Skamania County Superior Court intervene to state what should have been plain – that the City owned and was responsible for the sewer line.

### *The City's Retaliation – False Cloud on Title and Interference with Sale*

4.12    On December 10, 2025, just after the McKees filed their lawsuit, the Defendants, Sabo and Good proposed that the City acquire Lot C-43 under a 1979 affidavit for about $3,000. The claim was false, frivolous and malicious and was intended as retaliation against the McKees for asserting their rights, and to try and prevent the proposed development.

4.13    The City has never withdrawn this false claim to the property or taken any action to remove the cloud on title.

### *Lawsuit – Plaintiffs Sue, Win, and Still Face City Obstruction*

4.14    The McKees and Rod and Gun Club sued the City to have the court declare that the sewer running to the property was the City's responsibility.

4.15    In its Answer, the City - contrary to its previous position, admitted the sewer was a "City-owned *after* the McKees sought judicial intervention. six-inch line." In other words, the City only agreed to admit that it owned and was responsible for the sewer

4.16    The Court rejected the City's "jurisdictional" argument and entered Judgment on the Pleadings on January 2, 2025, declaring that the City owns and must maintain the line.

4.17    In an effort to further frustrate and delay the McKee's short-plat on an issue that was now resolved, the City filed a motion for reconsideration (claiming the line was four inches) and lost.

Page 6 of 12– COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL
2025.10.20 COMPLAINT [FINAL]

Bradley Andersen Law, PLLC
PO Box 147
North Bonneville, WA 98639
360.638.3007

4.18    But the City was not done with its attempts to frustrate the McKee's plans – it appealed the ruling—spending more public funds on what amounts to a procedural, non-germane issue – whether the court had standing to tell the City what apparently was now factually undisputed and black letter law – that the City owned and was responsible for the line. Why the litigation tactics? To further delay, frustrate and interfere with the McKees development plans.

### *Deputy Mayor Josh Good's Illegal Contract and Retaliation*

4.19    In September 2024, before the lawsuit was filed, the City approved a personal-services contract paying Good $1,250 per month to "manage the lawsuit."

4.20    Despite his conflict of interest, Sabo signed and was listed as the manager of the contract – in other words, Sabo would manage Good's work under the contract, which was all done with the City Council's blessings.

4.21    RCW 42.23.030 prohibits council members from contracting with their own city. Despite this, Good continues to receive payments without accounting for his time and under the supervision of Mayor Sabo.

4.22    While exercising his power as Deputy Mayor, or under the authority given to him under his personal services contract with the City, Good advised McKee directly that "the City is going to fight you all the way," confirming his and Mayor Sabo's motive. Good also advised Mr. McKee that the City was prepared to raise other issues that could derail his plans.

4.23    It worked. In July 2025, the McKees announced they were tired of and could no longer afford fighting the City and therefore abandoned their building plans. Consequently, they exercised their right to rescind the agreement to acquire the property, and returned the property to the Rod and Gun Club.

4.24    This has left the Rod and Gun Club with legal fees incurred in supporting the McKees development attempts, real property that is still under a cloud of title and now tainted by the City's misconduct. What developer would want to go through what the McKees were forced to endure?

Page 7 of 12– COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL
2025.10.20 COMPLAINT [FINAL]

Bradley Andersen Law, PLLC
PO Box 147
North Bonneville, WA 98639
360.638.3007

# V. CAUSES OF ACTION

## COUNT 1 – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

5.1     Plaintiff reasserts and incorporates by reference all preceding paragraphs.

5.2     Plaintiff had a valid and enforceable contractual relationship with Craig and Brindi McKee for the sale of Lot C-43.

5.3     Defendants knew of that contractual relationship.

5.4     Defendants intentionally interfered with that relationship by improper means and/or for improper purposes, including:

  a. Making false and misleading statements about ownership and responsibility for the sewer line;

  b. Unlawfully using a personal services contract;

  c. Wrongfully Using their official position to favor the Mayor's persona interest;

  d. Imposing arbitrary and inconsistent conditions on the McKees' short-plat application;

  e. Delaying and obstructing the City's processing of the application; and

  f. Asserting false legal claims of ownership or forfeiture to cloud title to the property.

5.5     Defendants' actions caused the McKees to terminate the purchase and sale agreement which caused Plaintiff to suffer financial harm, including loss of the sale, additional costs, and attorney fees.

## COUNT 2 – SUBSTANTIVE DUE PROCESS VIOLATIONS

5.6     Plaintiff reasserts and incorporates by reference all preceding paragraphs.

5.7     Defendants acted under color of state law.

5.8     Defendants' actions were arbitrary, capricious, and undertaken in bad faith.

5.9     Defendants' conduct was not reasonably related to any legitimate governmental interest and instead was motivated by personal animus and self-interest.

Page 8 of 12– COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL
2025.10.20 COMPLAINT [FINAL]

Bradley Andersen Law, PLLC
PO Box 147
North Bonneville, WA 98639
360.638.3007

5.10   Defendants' actions deprived Plaintiff of its right to fair and lawful treatment in land-use and property matters, causing measurable harm and damages.

## COUNT 3 – FIRST AMENDMENT RETALIATION

5.11   Plaintiff reasserts and incorporates by reference all preceding paragraphs.

5.12   Plaintiff and its representatives engaged in protected activity by speaking out about the City's conduct and speaking out against the Mayor's misconduct of attempting to stop the project or force the McKees to pay to upgrade his sewer system and for seeking redress through litigation.

5.13   Defendants took adverse actions against Plaintiff in retaliation for that protected activity, including filing false claims of forfeiture, obstructing the short-plat process, and continuing frivolous appeals.

5.14   Defendants' retaliatory acts would chill a person of ordinary firmness from engaging in protected activity.

5.15   Defendants' retaliation caused Plaintiff injury, including loss of property rights, legal expenses, and reputational harm.

## COUNT 4 – EQUAL PROTECTION / SELECTIVE ENFORCEMENT

5.16   Plaintiff reasserts and incorporates by reference all preceding paragraphs.

5.17   Public records demonstrate that the city has never put any other similarly situated developer through the same procedural hoops as they imposed on the McKees.

5.18   Public records also show that no other developer has been the subject of a Mayor using his power to try and stop, frustrate or develop a development, nor has any other developer been required to satisfy conditions that were only for the benefit of the sitting mayor.

5.19   Defendants intentionally treated Plaintiff and its purchasers differently from other similarly situated landowners.

5.20   There was no rational or legitimate governmental purpose for Defendants' differential treatment.

Page 9 of 12– COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL
2025.10.20 COMPLAINT [FINAL]

Bradley Andersen Law, PLLC
PO Box 147
North Bonneville, WA 98639
360.638.3007

5.21   Defendants' actions were motivated by favoritism, personal interest, and hostility toward the Plaintiff and its purchasers.

5.22   As a result, Plaintiff suffered loss of property rights and economic harm.

## COUNT 5 – SLANDER OF TITLE

5.23   Plaintiff reasserts and incorporates by reference all preceding paragraphs.

5.24   Defendants published and maintained false claims that the City held a legal or equitable right to reacquire Lot C-43 under a 1979 affidavit that had no legal effect on the property.

5.25   Defendants knew or should have known that those claims were false; indeed, Sabo and Good, in their official capacities, acted with a malicious intent toward the McKees and the Plaintiff.

5.26   The false statements disparaged Plaintiff's title to the property and were made without privilege or justification.

5.27   As a result, Plaintiff suffered pecuniary loss, including the failed sale and legal expenses incurred to clear title.

## COUNT 6 – CONFLICT OF INTEREST / ULTRA VIRES ACTS

5.28   Plaintiff reasserts and incorporates by reference all preceding paragraphs.

5.29   Defendant City entered into a personal-services contract with Councilmember Josh Good, signed by Mayor Brian Sabo, under which Good was paid monthly to "manage" litigation involving this matter.

5.30   At all relevant times, Good was an elected City Council member prohibited by law from contracting with the City.

5.31   The contract was unauthorized, void, and constituted an unlawful conflict of interest.

5.32   The contract payments furthered Defendants' retaliatory scheme and caused harm to Plaintiff through unlawful expenditures and misuse of public funds.

5.33   Good also used the power granted under the contract to further his and Sabo's

Page 10 of 12– COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL
2025.10.20 COMPLAINT [FINAL]

Bradley Andersen Law, PLLC
PO Box 147
North Bonneville, WA 98639
360.638.3007

private interests by trying to proven, delay or frustrate the McKees from developing the Property. For example, Good used this power to advise the McKees that the City was going to fight their attempt to develop the property even though such development should have been a simple, straightforward process that should have been a straightforward, straightforward process.

### COUNT 7 – VIOLATION OF 42 U.S.C. § 1983

5.34   Plaintiff reasserts and incorporates by reference all preceding paragraphs.

5.35   At all relevant times, Defendants acted under color of state law.

5.36   Through the acts described above, Defendants deprived Plaintiff of rights, privileges, and immunities secured by the Constitution and laws of the United States, including:

   a. The right to due process of law under the Fourteenth Amendment;

   b. The right to equal protection of the laws under the Fourteenth Amendment; and

   c. The right to freedom of speech and to petition the government for redress under the First Amendment.

5.37   Defendants' actions were willful, malicious, and in reckless disregard of Plaintiff's constitutional rights.

5.38   As a direct result, Plaintiff suffered economic losses, damage to property rights, loss of contractual opportunities, and attorney fees.

### VI.   PRAYER

WHEREFORE, Plaintiff **Skamania County Rod & Gun Club** respectfully requests that this Court enter judgment in its favor and against all Defendants, jointly and severally, and grant the following relief:

6.1   **Declaratory Relief.** Declare that Defendants' conduct was unlawful; that the City of North Bonneville owns and is responsible for maintaining and repairing the sewer line serving Lot C-43; that Defendants' assertions of ownership or forfeiture under the alleged 1979 affidavit are void; and that Defendants' actions violated Plaintiff's constitutional and statutory rights.

6.2   **Injunctive Relief.** Enjoin Defendants, their agents, and successors from further

Page 11 of 12– COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL
2025.10.20 COMPLAINT [FINAL]

Bradley Andersen Law, PLLC
PO Box 147
North Bonneville, WA 98639
360.638.3007

retaliation, interference, or other actions designed to delay or prevent the lawful use, sale, or development of Lot C-43; and order Defendants to formally withdraw and record the removal of any cloud on the title to the property.

      6.3    **Compensatory and Consequential Damages.** Award Plaintiff monetary damages in an amount to be proven at trial for the loss of the McKee sale, diminution in property value, costs of resale, injury to reputation, attorney's **fees expended to clear title, and all other damages proximately caused by Defendants'** conduct.

      6.4    **Restitution and Disgorgement.** Declare the City's personal-services contract with Defendant **Josh Good** void and order restitution of all public funds paid under that unlawful agreement.

      6.5    **Attorney Fees and Costs.** Award Plaintiff its reasonable attorney fees, expert fees, and costs incurred in this action pursuant to RCW 4.84.185, 42 U.S.C. § 1988, and any other applicable law.

      6.6    **Such Other Relief as the Court Deems Just and Equitable.** Grant such further legal or equitable relief as this Court deems appropriate to compensate Plaintiff fully and to deter future misconduct by public officials.

## VII.    NOTICE OF JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: <u>October 20, 2025</u>

                                        BRADLEY ANDERSEN LAW, PLLC

                                        /s/ *Bradley W. Andersen*
                                        BRADLEY W. ANDERSEN, WSB #20640
                                        *Attorney for Plaintiff*

Page 12 of 12– COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL
2025.10.20 COMPLAINT [FINAL]

Bradley Andersen Law, PLLC
PO Box 147
North Bonneville, WA 98639
360.638.3007